UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZACHARY NILES,

        Plaintiff,                                     Hon. Paul L. Maloney

v.                                               Case No. 1:23-cv-919

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process.    *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.    *Id.* at 224-25.    Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.    *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.    *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017).    The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.    *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018).    This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.    *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 24 years of age on his alleged disability onset date.    (PageID.62). He successfully completed high school but has no past relevant work experience. (PageID.62).    Plaintiff applied for benefits on February 9, 2021, alleging that he had been disabled since February 20, 2018, due to headache disorder, neurological disorder, psoriatic arthritis, psoriasis, concentration deficit, cognitive impairment, asthma, and onocular vision dysfunction.    (PageID.46, 304).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).    Following an administrative hearing, ALJ Robert Tjapkes, in an opinion dated September 30, 2022, determined that Plaintiff did not qualify for disability benefits.    (PageID.46-103).    The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.    Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.    *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).    If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.    *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).    The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an

exertional impairment, both are considered in determining his residual functional capacity.   *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.   *See* 42 U.S.C. § 423(d)(2)(A).   While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from psoriatic arthritis, functional neurological symptom disorder,[1] vertical heterophoria,[2] chronic headaches, and

---

[1] Functional neurological symptom disorder "features nervous system (neurological) symptoms that can't be explained by a neurological disease or other medical condition."   Functional Neurologic Disorder/Conversion Disorder, available at https://www.mayoclinic.org/diseases-conditions/conversion-disorder/symptoms-causes/syc-20355197 (last visited July 16, 2024).   Functional neurologic disorder "is related to how the brain functions, rather than damage to the brain's structure (such as from a stroke, multiple sclerosis, infection or injury)."   *Id.*

[2] Vertical heterophoria (VH) is "a type of binocular vision disorder that occurs when the eyes are misaligned" which can cause "headaches and dizziness."   What is Vertical Heterophoria?, available at https://www.nvcofny.com/what-is-bvd/vertical-heterophoria/ (last visited July 16, 2024).   Individuals with VH "are often misdiagnosed as having vertigo and migraine disorder."   *Id.*

obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.48-53).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform sedentary work subject to the following non-exertional limitations: (1) he cannot climb ladders, ropes, or scaffolds or work around hazards such as unprotected heights or unguarded, moving machinery; (2) he cannot engage in commercial driving; (3) he must be able to wear tinted lenses; (4) he can occasionally crouch, crawl, kneel, balance, stoop, and climb ramps and stairs; (5) he cannot be exposed to extremes of vibration; (6) he can be exposed to moderate noise levels; (7) he can understand, remember, and carry out simple instructions and tasks; (8) he can occasionally interact with co-workers, supervisors, and the public; and (9) he cannot perform production rate work (such as on an assembly line). (PageID.54).

The ALJ found that Plaintiff had no past relevant work experience at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding.  *O'Neal*, 799 Fed. Appx. at 316.  In satisfying this burden, the ALJ may rely on a vocational expert's testimony.  *Ibid.*

In this case, a vocational expert testified that there existed approximately 65,100 jobs in the national economy which an individual with Plaintiff's RFC could perform.    (PageID.62-63, 97-100).    This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").    Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I.    Medical Source Opinion

Several of Plaintiff's care providers offered opinions regarding Plaintiff's condition.    The ALJ, however, discounted many of these opinions.    Plaintiff argues that he is entitled to relief because the ALJ's assessment of his care providers' opinions is not supported by substantial evidence.

Because Plaintiff filed his application after March 27, 2017, the ALJ evaluated the opinions in question pursuant to 20 C.F.R. § 416.920c.    This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source.    20 C.F.R. § 416.920c(a). Instead, the ALJ is required to articulate his determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."    *Id.* § 416.920c(b)(1).

These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or

contradict the opinion.    *Id*. § 416.920c(1)-(5).    The ALJ must explain his consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id*. § 416.920c(b)(2), (3).   The regulations define "supportability" and "consistency" as follows:

> (1)    Supportability.   The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2)    Consistency.   The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id*. § 416.920c(c)(1)-(2).

Plaintiff argues that the ALJ failed to "properly consider the mandatory factors of supportability and consistency."   The Court is not persuaded.

A.    Dr. Brandon Peltier

On June 24, 2022, Dr. Peltier assessed Plaintiff's functional abilities. (PageID.1164-66).   The doctor reported that Plaintiff could lift no more than 5 pounds and could not bend or squat.   (PageID.1164).   The doctor also reported that during an 8-hour workday, Plaintiff could sit, stand, and walk for only one hour each. (*Id*.).   Finally, the doctor reported that Plaintiff will be absent from work "4 or more days per month" and will be off task "20% or more of the day" due to "pain, fatigue, and other symptoms."   (PageID.1165).

Treatment notes dated July 22, 2019, indicate that an MRI of Plaintiff's head was "negative" and an EEG examination was "normal." (PageID.533). Neuropsychological testing "showed significant impairment in speed of processing but no other significant abnormalities." (*Id.*). Treatment notes from throughout 2020, indicate that Plaintiff experienced "improvement" in his functional neurological symptom disorder symptoms. (PageID.666, 670, 674, 678). Plaintiff also reported improvement in his headache symptoms after being prescribed "new glasses" as well as "improvement in pain and concentration." (PageID.666-67, 671).

Treatment notes dated October 1, 2020, indicate that Plaintiff's participation in cognitive therapy produced "improvement in his ability to complete high level cognitive-linguistic tasks with greater accuracy and improved cognitive endurance." (PageID.802-03). Treatment notes dated December 10, 2020, indicate that, while Plaintiff "continues to have binocular vision dysfunction. . .he responded well to [a] new prismatic lens prescription. . .with a reduction in some of his symptoms." (PageID.769).

Treatment notes dated February 8, 2021, indicate that Plaintiff's headache symptoms were "doing well with his new glasses." (PageID.927). Treatment notes dated March 8, 2021, indicate that Plaintiff's ability to "tolerate light and focus" had improved. (PageID.919). Plaintiff reported that he "is able to read for at least 30 minutes at a time although sometimes he can read several hours." (*Id.*). Plaintiff also reported that he "is able to increase the complexity of what he is reading." (*Id.*).

Treatment notes dated July 1, 2021, indicated that Plaintiff exhibited "no objective indications of either peripheral or central vestibular system involvement." (PageID.1003).   The results of an oculomotor examination were "normal" with "no objective indications for central vestibulo-ocular pathway involvement."   (*Id.*). Rather, it appeared that Plaintiff was experiencing Persistent Postural-Perceptual Dizziness which "is common in individuals with migraine/headache disorder."   (*Id.*).

Treatment notes dated August 31, 2021, indicate that medication was providing Plaintiff with "significant benefit" of his functional neurological symptom disorder.   (PageID.1023).   Plaintiff also reported that he was "doing well" regarding his chronic headache symptoms.   (PageID.1024).   Treatment notes dated December 13, 2021, reiterate these findings and observations.   (PageID.113).   On April 13, 2022, Plaintiff participated in an MRI of his brain the results of which were "unremarkable."   (PageID.1191).   Treatment notes dated July 29, 2022, indicate that medication was providing Plaintiff with "significant benefit" of his functional neurological symptom disorder.   (PageID.1023).

Additionally, treatment notes regarding Plaintiff's mental status were consistent with the ALJ's RFC assessment.   (PageID.514, 518, 522, 529, 828, 994, 1023, 1028, 1033, 1038, 1048-52, 1112, 1134, 1141, 1181, 1187, 1204).   The results of numerous examinations of Plaintiff's back and musculature produced results consistent with the ALJ's RFC assessment.   (PageID.525, 533, 666-67, 670, 828, 836, 838-43, 920, 926-27, 931, 936, 941, 995, 1023, 1028, 1033, 1038, 1112, 1134,

1141, 1187).   Plaintiff, himself, consistently reported his pain as 3 or 4 on a 1-10 scale.   (PageID.569, 574, 577, 580, 583, 586, 589, 592, 600, 603, 607, 610, 614).

As the ALJ concluded, Dr. Peltier's opinions were inconsistent with "substantial evidence."   (PageID.57).   As the ALJ further concluded, the doctor "fail[ed] to provide much in the way of justification or analysis of [Plaintiff's] condition."   (*Id.*).   In sum, the ALJ's rationale for discounting Dr. Peltier's opinions is supported by substantial evidence.   Moreover, the ALJ properly assessed the doctor's opinion by reference to the relevant factors identified above.   Accordingly, this argument is rejected.

B.    Craig Derror, Ph.D.

On August 18, 2022, Dr. Derror offered his opinion regarding Plaintiff's ability to function.   (PageID.1171-75).   The doctor reported that Plaintiff experienced "serious impairment to function independently" in 7 of the 8 categories of functioning he assessed.   (PageID.1172).   The doctor also reported that Plaintiff will be absent from work "4 or more days per month" and will be off task "20% or more of the day" due to "pain, fatigue, and other symptoms."   (PageID.1175).   Plaintiff argues that he is entitled to relief because the ALJ failed to properly assess Dr. Derror's opinion.

The ALJ discounted Dr. Derror's opinion noting that such "lacks a detailed, function by function assessment of [Plaintiff's] condition and provides little in the way of detailed articulation, analysis, or citation to the evidence in support of its conclusions."   (PageID.61).   The ALJ further observed that the doctor's opinion "is not supported by the medical evidence."   (*Id.*).   As the evidence discussed above

reveals, the ALJ's rationale for discounting Dr. Derror's opinion is supported by substantial evidence. Moreover, the ALJ properly assessed the doctor's opinion by reference to the factors identified above. Accordingly, this argument is rejected.

        C.      Paul Callaghan, Ph.D.

Plaintiff argues that the ALJ failed to properly evaluate the opinion offered by Dr. Callaghan. (PageID.1198-99). It must be noted, however, that Dr. Callaghan did not offer any opinion or articulate any functional limitations which are inconsistent with the ALJ's RFC assessment. The doctor merely observed that Plaintiff "displays clear deficits with processing speed, and this is not a malingering profile." (PageID.1199). Dr. Callaghan offered this opinion in November 2018, before the evaluations and observations noted above. As if to underscore the little weight to which this opinion deserved, the doctor himself concluded that, "I am not sure what is going on." (*Id.*). The ALJ properly assessed the doctor's opinion by reference to the relevant factors identified above and his assessment is supported by substantial evidence. Accordingly, this argument is rejected.

        D.      Dr. Ronel Santos

On August 25, 2022, Dr. Santos offered an opinion regarding Plaintiff's functional abilities. (PageID.1214-17). The doctor opined that Plaintiff would be off task "20% or more of the day" due to his headache symptoms. (PageID.1217). The doctor further opined that Plaintiff was incapable of performing "even 'low stress' jobs." (*Id.*). Plaintiff argues that the ALJ improperly discounted the doctor's opinion. The ALJ did so on the ground that the doctor's opinion "lacks a

detailed, function by function assessment of [Plaintiff's] condition and provides little in the way of detailed articulation, analysis, or citation to the evidence in support of its conclusions." (PageID.60). Moreover, Dr. Santos did not articulate any functional limitations which are inconsistent with the ALJ's RFC assessment. The ALJ properly assessed the doctor's opinion by reference to the relevant factors identified above and his assessment is supported by substantial evidence. Accordingly, this argument is rejected.

## II.    Third-Party Testimony

Plaintiff's father testified at the administrative hearing. (PageID.93-100). Plaintiff argues that he is entitled to relief because the ALJ failed to indicate the weight he afforded this testimony.

The ALJ acknowledged and considered the testimony offered by Plaintiff's father. (PageID.46, 61). The ALJ did not articulate any analysis of this testimony, however, nor did he indicate the weight, if any, he afforded to it. While Plaintiff takes issue with this failure, the ALJ was not required to provide any analysis or discussion of this testimony. *See, e.g., Lyon v. Commissioner of Social Security*, 2023 WL 7354418 at *6 (W.D. Mich., June 7, 2023) (citing 20 C.F.R. § 404.1520c(d)). Moreover, to the extent Plaintiff's father offered testimony that Plaintiff is more limited than the ALJ recognized such is contradicted by substantial evidence as discussed above. Thus, even were the ALJ required to provide an analysis of this testimony, the failure to do so is harmless. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within such time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: July 29, 2024                            /s/ Phillip J. Green
                                               PHILLIP J. GREEN
                                               United States Magistrate Judge

-13-